**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 18-20223-Civ-TORRES

ZORAIDA CATANO,

      Plaintiff,

v.

PAULINE CAPUANO and
TRAVIS SCHIRATO,

      Defendants.

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Pauline Capuano's ("Defendant" or "Mrs. Capuano") motion for summary judgment [D.E. 98] against Zoraida Catano ("Plaintiff"). [D.E. 78]. Plaintiff responded to Defendant's motion on June 24, 2019 [D.E. 124] to which Defendant replied on July 11, 2019. [D.E. 129]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, and relevant authority, and for the reasons discussed below, Defendant's motion is **GRANTED in part** and **DENIED in part**.[1]

---

[1]    On March 22, 2019, the parties consented to the jurisdiction of the undersigned Magistrate Judge. [D.E. 84].

# I.    BACKGROUND

In 2006, Mauricio Capuano ("Mr. Capuano"), as the sole shareholder, incorporated his company, GSA Realty.  [D.E. 1 at ¶¶ 10, 12].  A few months after GSA Realty's formation, the company purchased real property (the "Property") in Miami for $2,600,000.[2]  *See id*. at ¶ 11.  In 2007, Mr. Capuano separated from his wife, Mrs. Capuano, and remained estranged from her until his death in January 2014.  *See id*. at ¶ 13.  After the separation, Mr. Capuano began a romantic relationship with Plaintiff, in Guatemala, which resulted in a daughter who was born in November 2008.   In the meantime, Mrs. Capuano moved to the Netherlands.

Several years later, in October 2013, Travis Schirato ("Mr. Schiarto"), Mrs. Capuano's nephew and a convicted felon, executed a purchase and sale agreement, to sell GSA Realty's Miami property to Laurinus Pierre and Michele Jean Gilles for $2,300,000.  At the time, Mr. Schirato held no position with GSA Realty nor did he have any ownership interest in the company.  A few months later, Mr. Capuano died in Miami on January 2, 2014.  According to Mr. Capuano's 2009 will – submitted for probate in Guatemala – he devised half of his estate to Plaintiff and the other half to his adult daughter, Graziela Capuano.[3]

After Mr. Capuano's death, Plaintiff alleges that Defendants held a series of telephone calls in which they discussed the pending sale of the Property, agreed to

---

[2]    The Property is located at 12901 Biscayne Bay Drive, Miami, Florida 33161.

[3]    Mr. Capuano executed the will five years prior to his death on August 7, 2009.

embezzle the proceeds from GSA Realty, and to conceal the embezzlement through a series of transfers and financial transactions. Purporting to act on GSA Realty's behalf, Mr. Schirato, nearly three months after Mr. Capuano's death, attended the closing of the sale, receiving $300,000 on behalf of GSA Realty and obtaining a promissory note from the buyers for $2,000,000, also payable to GSA Realty.

Immediately after the closing on March 25, 2014, Mr. Schirato transferred the $300,000 from GSA Realty to himself or corporate entities under his control. Mr. Schirato then transferred $114,000, out of the $300,000, to Mrs. Capuano who then transferred those funds to a personal bank account in Guatemala. Plaintiff believes that, thereafter, Mr. Schirato transferred $26,666.68 in interest payments on the property to himself or his corporate entities. Subsequently, without any authority to do so, Mr. Schirato advised the buyers, by letter, that servicing of the loan was being transferred from GSA Realty to Mr. Schirato, individually. After the buyers sent him another series of interest payments, totaling $40,000.02, Mr. Schirato sent them another letter, stating that he had assigned the next thirty-six payments to two individuals in New York.

A short time later, on August 20, 2014, Mr. Schirato executed a balloon note endorsement and assignment of mortgage deed, in exchange for a substantial sum, purporting to assign the note from GSA Realty to the individuals in New York. Thereafter, Plaintiff alleges that Mrs. Capuano and Mr. Schirato persisted in conspiring to hide the embezzled funds, with Mrs. Capuano making false

representations to the probate court and further impeding the recovery of estate assets, continuously through the time of the filing of Plaintiff's complaint.

## II. APPLICABLE PRINCIPLES AND LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 252 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592–94)).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III.   ANALYSIS

### A.   *Federal RICO Generally*

"It is the purpose of [The Racketeer Influenced and Corrupt Organizations Act ("RICO")] to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime." Organized Crime Control Act of 1970, Pub. L. No. 91–452, 84 Stat. 922, 923. The federal RICO

statute provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). The statute creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation" of the substantive provisions contained in Section 1962 of the RICO Act. 18 U.S.C. § 1964(c).

The required elements to state a claim for civil RICO liability are (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity. *See Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311 (11th Cir. 2000); *see also McCulloch v. PNC Bank*, 298 F.3d 1217, 1225 (11th Cir. 2002) ("[T]o state a RICO claim, a plaintiff must plead (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."). "Plaintiffs in such an action must identify and prove a pattern of racketeering activity, defined as two 'predicate acts' of racketeering activity within a 10–year period." *Id*. at 1311–12 (citing 18 U.S.C. § 1961(5)). "The phrase 'racketeering activity' is defined as any act which is indictable under a lengthy list of criminal offenses," including any act or threat involving murder, kidnaping, gambling, arson,

6

robbery, extortion, bribery, mail fraud, wire fraud, and counterfeiting. *See id.* at 1312; *see also* 18 U.S.C. § 1961(1).

Under Section 1964(c), civil RICO claimants must also demonstrate standing by showing "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Williams v. Mohawk Indus., Inc.*, 411 F.3d 1252, 1256 (11th Cir. 2005). Civil RICO claims are "essentially a certain breed of fraud claims," meaning they "must be pled with an increased level of specificity." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (citing Fed. R. Civ. P. 9(b)). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal & Const. Co.*, 482 F.3d at 1316 (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

## B.    *Federal RICO: Continuity*

To prove a RICO violation under both federal and Florida law, a plaintiff must establish, among other things, continuity.[4] *See Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (explaining that, in addition to showing two or more related predicate acts, federal RICO plaintiffs must show "the

---

[4]    While we could begin our analysis with other elements, we begin with continuity because there is a noticeable shortcoming on this issue in Plaintiff's RICO claims.

predicate acts demonstrate[] criminal conduct of a continuing nature"); *Lugo v. State*, 845 So. 2d 74, 99 (Fla. 2003) (explaining Florida RICO plaintiffs must establish "that a continuity of particular criminal activity exists"). There are two types of continuity: closed-ended continuity and open-ended continuity. "Closed-ended continuity refers to 'a closed period of repeated conduct.'" *Daedalus Capital LLC v. Vinecombe*, 625 F. App'x 973, 976 (11th Cir. 2015) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). There is no bright-line rule as to how long a scheme must last to satisfy closed-ended continuity, but "the substantial period of time requirement for establishing closed-ended continuity cannot be met with allegations of schemes lasting *less than a year*." *Jackson*, 372 F.3d at 1266 (emphasis added). A single scheme involving only one victim also does not satisfy closed-ended continuity even when the scheme lasts for a substantial period of time. *Daedalus Capital*, 625 F. App'x at 976 (citing *Jackson*, 372 F.3d at 1267; *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990) (affirming dismissal of RICO claim when a "closed-ended series of predicate acts . . . constituted a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities")).

By contrast, "[o]pen-ended continuity refers to 'past conduct that by its nature projects into the future with a threat of repetition.'" *Daedalus Capital*, 625 F. App'x at 976 (quoting *Daedalus Capital LLC*, 625 F. App'x at 976). In these cases, "plaintiffs can meet their burden by establishing either that 'the racketeering acts themselves include a specific threat of repetition extending indefinitely into the

future,' or that 'the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" *Jackson*, 372 F.3d at 1265.

Defendant argues that neither form of continuity exists because Mr. Schirato gambled away the proceeds of the real estate sale and there is no evidence that Defendant committed any of the other alleged predicate acts. Plaintiff contends, on the other hand, that closed-ended continuity exists because Defendant and Mr. Schirato began their conspiracy with the death of Mr. Capuano on January 2, 2014 and continued it with the sale of the Property on March 25, 2014. Plaintiff also asserts that the division of the sale proceeds took place in July 2015 and that Defendant doubled down on the conspiracy with a false certification to a Florida probate court that she had no knowledge that the shares of GSA Realty comprised assets of Mr. Capuano's estate. The scheme then allegedly continued in February 2016 with Defendant's misrepresentations to a probate court in Guatemala and Mr. Schirato's embezzlement of the sale proceeds through July 2018 – resulting in a conspiracy of approximately four years. Alternatively, Plaintiff argues that open-ended continuity exists because (1) the funds from the sale remain in the hands of a third-party and (2) Mr. Schirato has attempted to obtain those funds with continued misrepresentations to GSA Realty. Plaintiff therefore concludes that both types of continuity exist in this case and that Defendant's motion must be denied.

If we assume that Mrs. Capuano and Mr. Schirato committed the predicate acts over the course of four years, we agree that this constitutes a substantial period to establish closed-ended continuity for civil RICO liability. *See Jackson*, 372 F.3d

at 1266 ("Other circuits have agreed that the substantial period of time requirement for establishing closed-ended continuity cannot be met with allegations of schemes lasting less than a year.") (citing cases). But, closed-continuity cannot exist in this case because the alleged racketeering was related to a *single* scheme with a discrete goal "to embezzle, divide, and launder more than $2 million in funds that properly belong to the Estate of Mauricio Capuano, of which Plaintiff . . . is a primary beneficiary." [D.E. 1 at 1]. And the Eleventh Circuit has repeatedly held that in cases "where [] RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *See Jackson*, 372 F.3d at 1267 (citing cases).

Not to be deterred, however, Plaintiff relies heavily on the Court's Order denying Defendant's motion to dismiss [D.E. 42] and insists that the alleged conspiracy took place over a substantial amount of time to sustain a civil RICO claim. Yet, Plaintiff's argument is unpersuasive because the Court's Order did not consider whether the allegations related to a single goal. The Court merely considered whether there were plausible allegations that the predicate acts occurred over a sufficient amount of time. In light of that, Plaintiff has failed to explain how the predicate acts seek to accomplish any other goal than to deprive Plaintiff of the funds and property belonging to the estate of Mr. Capuano. Indeed, the allegations related to this scheme, as well as the scheme itself, even when viewed in a light most favorable to Plaintiff, are not of the nature to establish the

sort of offense that RICO was designed to address. We must therefore conclude that – irrespective of the length of the alleged conspiracy – closed-ended continuity cannot exist because Plaintiff merely alleges that the only goal in this case was to embezzle, divide, and launder $2 million dollars of Mr. Capuano's estate.[5]

As for open-ended continuity, Plaintiff argues that the proceeds of the real estate sale are in the possession of a third party (LoanCare, LLC) and that Mr. Schirato has continued his attempts to obtain possession of the estate's funds through fraudulent misrepresentations. Plaintiff relies, as support, on exhibits 25 and 26 that she submitted in opposition to Defendant's motion for summary judgment. [D.E. 125-25, 125-26]. But, Plaintiff does not offer any explanation of how these exhibits constitute "a specific threat of repetition extending indefinitely into the future . . . ." *Jackson*, 372 F.3d at 1265. Plaintiff instead directs the Court

---

[5]     *See, e.g., Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 18 (1st Cir. 2000) (noting that "the fact that a defendant has been involved in only one scheme with a singular objective and a closed group of targeted victims" supports the conclusion that there is no continuity); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (finding that predicate acts occurring over a three year period is insufficient to allege a pattern of racketeering when the complaint alleged a single scheme with a single goal); *see also Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 780 (7th Cir. 1994) (various factors besides temporal span should be considered in assessing continuity, including the number of victims, the presence of separate schemes, and the occurrence of distinct injuries); *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993) (finding that in addition to duration, weighing "extensiveness" of the RICO scheme, including number of victims, number and variety of racketeering acts, whether the injuries caused were distinct, the complexity and size of the scheme, and the nature or character of the enterprise or the unlawful activity); *United States v. Pelullo*, 964 F.2d 193, 208 (3d Cir. 1992) ("We have eschewed the notion that continuity is solely a temporal concept, though duration remains the most significant factor."); *U.S. Textiles, Inc. v. Anheuser–Busch Cos.*, 911 F.2d 1261, 1269 (7th Cir. 1990) ("[I]t is not irrelevant, in analyzing the continuity requirement, that there is only one scheme.") (internal quotation marks and citation omitted)).

to the exhibits and leaves it to the Court to determine – based on three conclusory sentences – whether open-ended continuity exists.

Plaintiff's failure to develop her argument or explain how the exhibits arise to a specific ongoing threat of ongoing criminal activity is by itself fatal because "conclusory arguments are insufficient to withstand summary judgment." *Jackson v. City of Albany, Ga.*, 49 F. Supp. 2d 1374, 1380 (M.D. Ga. 1998) (citing *Kadlec v. Illinois Bell Tel. Co.,* 407 F.2d 624 (7th Cir. 1969)). In any event, the exhibits that Plaintiff relies on do not establish open-ended continuity. Exhibit 25, for example, is an internal email chain involving several individuals at McKinley Mortgage and LoanCare, LLC. The communications show that Mr. Schirato contacted both companies on several occasions to inquire about the funds related to Mr. Capuano's estate in June 2018. But, the emails fail to show how any of Mr. Schirato's actions constitute a specific threat of fraudulent misrepresentations or any other form of racketeering. The most that one can infer from the emails (without any context or supporting reasons) in the light most favorable to Plaintiff is that Mr. Schirato contacted the third-parties and they responded that the funds of Mr. Capuano's estate cannot be provided until the current litigation is resolved. There is nothing in the emails to suggest that Mr. Schirato committed any criminal wrongdoing.

Plaintiff then directs the Court's attention to exhibit 26 but those emails are equally unavailing because they merely provide that an attorney named David Carlisle instructed employees at LoanCare, LLC to not disburse funds to anyone because there is a pending state court action against Mr. Schirato. David states, for

instance, that LoanCare should wait to take any action pending further order of the Court and that this will ensure that the funds are distributed to the proper individual(s). There is again nothing in the email chain to remotely suggest that Mr. Schirato or Defendant made a fraudulent misrepresentation or a specific threat of repetitive racketeering to establish open-ended continuity. Accordingly, Defendant's motion for summary judgment as to Plaintiff's federal RICO claims in counts one and two is **GRANTED** for a lack of continuity.

### C. *Federal RICO: Enterprise*

Putting aside Plaintiff's failure to establish continuity, a required element common to all RICO claims is the existence of an enterprise. *See Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995) ("A plaintiff asserting a RICO claim must allege the existence of an enterprise.") (citing *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987)). A RICO enterprise is defined as "a group of persons associated together for a common purpose" and "is proved by evidence of an ongoing organization . . . and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). This means that a RICO enterprise "must exhibit three basic characteristics: (1) a common or shared purpose; (2) some continuity of structure or personnel; and (3) an ascertainable structure distinct from that inherent in a pattern of racketeering." *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 769–70 (8th Cir. 1992). A RICO enterprise can either be a legal entity or an association in fact. *See St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000).

Plaintiff alleges that that Mrs. Capuano and Mr. Schirato "conspired to and did form an association-in-fact[6]" to embezzle funds through a pattern of criminal activity. [D.E. 1]. An "association-in-fact" enterprise need not have any structural features beyond "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). This means that "[t]here is no restriction upon the associations embraced by the definition," and it can include "both legitimate and illegitimate enterprises within its scope." *Turkette,* 452 U.S. at 580. It is important to note, however, that while the definition of an enterprise is exceedingly broad, it is not without limits. An enterprise is not, for instance, the same as a pattern of racketeering activity. Instead, an enterprise "is an entity separate and apart from the pattern of activity in which it engages." *Id*. at 583 ("The existence of an enterprise at all times remains a separate element which must be proved").

"The question of whether the enterprise has a 'separate existence' from the pattern of activity through which it is conducted ought to be the focus of inquiry in every illegitimate enterprise case." David B. Smith & Terrance G. Reed, Civil RICO, § 3.06, p. 3–50 (Matthew Bender & Co. 2000). Proof of a pattern of

---

[6] An association-in-fact enterprise requires the existence of an entity as "an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583; *see also NOW v. Scheidler*, 510 U.S. 249, 259 n 5 (1994) (noting that an "enterprise" under Section 1962(a) must "be an entity that was acquired through illegal activity," whereas an "enterprise" under Section 1962(c) is "generally the vehicle through which the unlawful pattern of racketeering is committed, rather than the victim of that activity").

racketeering, for example, does not prove the existence of an enterprise, or vice versa. Instead, a plaintiff must allege and present evidence that establishes that the association exists for a purpose *other than* to commit the predicate acts. *See Turkette,* 452 U.S. at 580 ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages.")*; Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) ("[T]he plaintiff must plead specific facts which establish that the association exists for purposes other than simply to commit the predicate acts."); *see also In re McCann*, 268 F. App'x 359, 366 (5th Cir. 2008) (same). As such, if an association merely has a single discrete goal to accomplish the predicate acts, it is not an association within the meaning of the federal RICO statute. *See Household Bank FSB v. Metro Associates,* 1992 WL 350239 at *1 (E.D. La. 1992) ("If the association has as its *raison d'etre* a single, discrete goal toward which all its energies are directed, the association is not a RICO enterprise.").

Here, Plaintiff claims that Defendants formed an association-in-fact enterprise "to achieve the embezzlement and laundering of GSA Realty funds through a pattern of criminal activity to a common purpose." [D.E. 1]. Plaintiff also alleges that evidence of the enterprise is proved through "the coordinated and systematic accomplishment of mail and wire fraud, falsification of corporate documents, misrepresentation of authority, and perjury in official proceedings." *Id*. But, Plaintiff never alleges – much less provides any evidence of – any distinction between the enterprise and the pattern of racketeering activity.

The United States Court of Appeals for the Eighth Circuit formulated a succinct test to determine whether an alleged enterprise is distinct from a pattern of racketeering activity. The Court stated that "[i]n assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is our normal practice to determine if the enterprise would still exist were the predicate acts removed from the equation." *Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir. 1997); *see, e.g.*, *Bank v. Brooklyn Law School*, 2000 WL 1692844 at *4 (S.D.N.Y. 2000) (finding that a plaintiff failed to allege that the enterprise exited separate and apart from a pattern of racketeering when there was no allegation that the enterprise would exist if the predicate acts were removed from the equation).

With this test in mind, Defendant's motion is well taken because – even if we assume that the enterprise meets the structure and purpose requirements of an association-in-fact – there is zero evidence that this enterprise committed anything other than the predicate acts. *See Yandell v. Christensen*, 2017 WL 7371183, at *6 (M.D. Fla. Aug. 18, 2017) ("To plead the existence of an enterprise, a plaintiff must also establish distinctiveness.") (citing *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1356 (11th Cir. 2016)). "In cases involving a legal entity, the matter of proving the enterprise element is straightforward, as the entity's legal existence will always be something apart from the pattern of activity performed by the defendant or his associates." *Boyle*, 556 U.S. at 955 (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001)); *see also United States v. Kragness*, 830 F.2d 842, 855 (8th

Cir. 1987) ("Separating the enterprise from the pattern of racketeering is generally not problematic where a legal entity is involved, since this entity is likely to be clearly distinct from the acts of racketeering.") (quotation omitted).

Yet, for an association-in-fact enterprise (as alleged here), there must be evidence "of the entity's 'separate' existence and 'ongoing organization.'" *Boyle*, 556 U.S. at 955 (quoting *Turkette*, 452 U.S. at 583); *see also Mackin v. Auberger*, 59 F. Supp. 3d 528, 545–46 (W.D.N.Y. 2014) ("Plaintiff's complaint must allege facts supporting the separate existence of a RICO enterprise.") (citing *Manax v. McNamara*, 660 F. Supp. 657, 662 (W.D. Tex. 1987) (where plaintiffs alleged the existence of an association-in-fact enterprise, comprised of the mayor and other defendants who associated together to allegedly deprive plaintiff Manax of his medical license, plaintiffs' RICO claim was dismissed because it was "not clear how, or even if, the enterprise is separate from the Defendants . . . No facts are alleged which lend support to the separate existence of a RICO enterprise.")). And this will often require "proof of an enterprise's separate existence," and "*different evidence* from that used to establish the pattern of predicate acts.*" *Boyle*, 556 U.S. at 955 (emphasis added).[7]

Plaintiff's response – which attempts to rebut many of Defendant's arguments – noticeably sidesteps this issue. Plaintiff instead focuses on how the enterprise has a common purpose and how Mrs. Capuano's actions, even if

---

[7]    Evidence needed to establish an enterprise's separate existence may be provided via an organizational hierarchy, an internal discipline mechanism, regular meetings, or a practice of reinvesting proceeds to promote and expand the enterprise. *See Boyle*, 556 U.S. at 956.

periodically in conflict with those of Mr. Schirato, does not undermine the enterprise itself. Yet, Plaintiff never directly confronts Defendant's argument that there is zero evidence that the alleged enterprise existed for any other purpose than to commit the predicate acts. And the reason for that omission might be because the complaint specifically undermines that contention. *See, e.g.*, [D.E. 1] ("In this manner, Pauline and Travis conspired to and did form an association-in-fact . . . to achieve the embezzlement and laundering of GSA Realty funds through a pattern of criminal activity to a common purpose."); *see also Acosta v. Campbell*, 2006 WL 146208, at *7 (M.D. Fla. Jan. 18, 2006) ("Acosta's allegations are to the contrary-that the associations between CitiMortgage/Citibank and MCA exist merely for the purpose of funding mortgages and the association between CitiMortgage/Citibank and the Law Office existed for the purpose of foreclosing the mortgage. Acosta's RICO claims would fail on this basis alone."). Plaintiff has therefore failed to provide any evidence that there is an enterprise that existed for any other purpose than to commit the predicate acts. *See Turkette*, 452 U.S. at 583 (finding that an enterprise must be "an entity separate and apart from the pattern of activity in which it engages").

Because each element of a RICO element is required, and Plaintiff fails to show how Mrs. Capuano and Mr. Schirato took part in an enterprise – to accomplish any other goal than the predicate acts – and Plaintiff fails to provide any other evidence of the enterprise's separate existence, Defendant's motion for summary judgment as to Plaintiff's federal RICO claims is **GRANTED** for this

additional reason.  *See, e.g., In re Actiq Sales & Mktg. Practices Litig.*, 2009 WL 1444443, at *6 (E.D. Pa. May 22, 2009) ("Plaintiffs have failed to plead sufficient facts to establish that the alleged enterprise has a separate existence apart from the pattern of activity in which it engages.  Without such facts, Plaintiffs' substantive RICO claims are deficient."); *United States v. Lombardo*, 639 F. Supp. 2d 1271, 1284 (D. Utah 2007) ("The separate existence requirement arises from the language of the statute itself, which requires that a RICO conspiracy violation be based on the existence of an enterprise *and* its planned pattern of racketeering activity.") (emphasis in original).

### C.    *Florida RICO*

Plaintiff alleges in counts three and four that Defendant violated the Florida RICO statute.  A Florida RICO claim is examined in the same way as a federal RICO claim.  *See Ferrell v. Durbin*, 311 F. App'x 253, 256 (11th Cir. 2009) ("[T]he Florida RICO statute is patterned after the Federal RICO statute and Florida RICO cases follow Federal RICO cases.  Thus, the analysis of the Federal RICO claims is equally applicable to the Florida RICO claims.") (citing *See Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263–64 (11th Cir. 2004)).  In fact, the two statutes are nearly identical and, like its federal counterpart, a Florida RICO claim requires two predicate acts to bring conduct within the ambit of a pattern of racketeering activity.  *See* Fla. Stat. § 895.07 ("'Pattern of racketeering activity' means engaging in *at least two incidents* of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise

are interrelated by distinguishing characteristics and are not isolated incidents")
(emphasis added).[8]

Defendant's motion is well taken because, for the reasons set forth above, closed-ended continuity cannot exist "where the RICO allegations concern only a single scheme with a discrete goal," even when a scheme takes place over a long period of time. *Jackson*, 372 F.3d at 1269. Open-ended continuity also fails for the same reasons because there is no evidence that the alleged misrepresentations were part of the "regular way of doing business" or that they constitute an ongoing threat of criminal activity. *Jackson*, 372 F.3d at 1265. Accordingly, Defendant's motion for summary judgment as to Plaintiff's Florida RICO claims in counts three and four is **GRANTED**. *See, e.g.*, *Daedalus Capital LLC v. Vinecombe*, 625 F. App'x 973, 977 (11th Cir. 2015) ("[T]he district court did not err in granting summary judgment to Appellees on the federal and Florida RICO counts," for a lack of

---

[8]     The federal RICO civil remedies provision provides, in relevant part, that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney" fee . . . ." 18 U.S.C. § 1964(c).

The Florida RICO civil remedies provision titled "Civil cause of action" provides:

> Any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of s. 772.103 shall have a cause of action for threefold the actual damages sustained and, in any such action, is entitled to a minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.

Fla. Stat. § 772.104(1).

continuity); *Ferrell v. Durbin*, 311 F. App'x 253, 254 (11th Cir. 2009) (affirming the dismissal of a plaintiff's federal and Florida RICO claims for a lack of continuity).

### D. *Conspiracy*

The final issue is whether summary judgment should be granted as to Plaintiff's state law conspiracy claim. "Florida does not recognize an independent action for conspiracy," meaning a conspiracy claim is not viable without an underlying cause of action. *Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1360–61 (S.D. Fla. 2002) (citing *Churruca v. Miami Jai Alai, Inc.*, 353 So. 2d 547, 550 (Fla. 1977); *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 460 (Fla. 5th DCA 1999)). That is, civil conspiracy is derived from the underlying claim that forms the basis of the conspiracy and the "gist of a civil conspiracy is not the conspiracy itself but the civil wrong which is done through the conspiracy which results in injury to the Plaintiff." *Czarnecki v. Roller*, 726 F. Supp. 832, 840 (S.D. Fla. 1989) (discussing and applying Florida law). Therefore, Plaintiff's conspiracy claim cannot stand because, without a viable underlying cause of action, a conspiracy claim must fail. *See Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1199 (11th Cir. 2004) ("If the underlying cause of action is not viable, the conspiracy claim must also fail."); *Palmer v. Gotta Have it Golf Collectibles, Inc.*, 106 F. Supp. 2d 1289, 1303 (S.D. Fla. 2000) (granting summary judgment for defendant on plaintiff's conspiracy claim where there were no genuine issues of material fact as to the underlying tortious interference claim); *Ovadia v. Bloom,* 756 So. 2d 137,

140 (Fla. 3d DCA 2000) (affirming summary judgment for defendant on conspiracy claim where summary judgment was granted on underlying claims).

With that being said, the allegations in Plaintiff's complaint give rise to several causes of action notwithstanding the dismissal of Plaintiff's federal and state RICO claims. Indeed, claims such as fraud, conversion, and constructive trust are some of the causes of action that come to mind. This means that, while the Court could dismiss Plaintiff's conspiracy count as failing to include an underlying cause of action and close this case, that would *not* be in the interests of justice given that there are several viable claims already embedded in Plaintiff's complaint. Plaintiff merely needs to coalesce the allegations presented and plead the relevant causes of action that relate to the alleged actions of Mrs. Capuano and Mr. Schirato.

We therefore find that Plaintiff should, at least, be given leave to file an amended complaint to set forth any viable causes of action to couple with her conspiracy claim. Allowing Plaintiff to amend her complaint will not prejudice Defendant – because the required allegations are already presented in the complaint – and it will allow Plaintiff to litigate her claims on the merits. There is also no Scheduling Order in effect since Judge Scola referred the case on March 25, 2019 [D.E. 85], meaning Defendant has no persuasive argument that it will suffer any prejudice if Plaintiff can amend her complaint to remedy her conspiracy claim. Accordingly, in the interests of justice, Defendant's motion for summary judgment as to Plaintiff's conspiracy claim is **DENIED** with Plaintiff given leave to amend her complaint within fourteen (14) days from the date of this Order. If Plaintiff

chooses not to do so, Defendant may renew its motion as to Plaintiff's conspiracy claim.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's motion for summary judgment [D.E. 98] is **GRANTED in part** and **DENIED in part**:

A. Defendant's motion for summary judgment as to counts 1-4 is **GRANTED**.

B. Defendant's motion for summary judgment as to count 5 is **DENIED**.

C. Any amended complaint shall be filed within fourteen (14) days from the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of July, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge