# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 18-20223-Civ-TORRES

ZORAIDA CATANO,

   Plaintiff,

v.

PAULINE CAPUANO and
TRAVIS SCHIRATO,

   Defendants.

_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

  This matter is before the Court on Pauline Capuano's ("Defendant" or "Mrs. Capuano") motion to dismiss [D.E. 142] against Zoraida Catano ("Plaintiff"). Plaintiff responded to Defendant's motion on January 9, 2020 [D.E. 168] to which Defendant replied on January 17, 2020. [D.E. 171-1]. Therefore, Defendant's motion is now ripe for disposition. After careful consideration of the motion, response, reply, and relevant authority, and for the reasons discussed below, Defendant's motion is **GRANTED in part** and **DENIED in part**.[1]

---

[1] On March 22, 2019, the parties consented to the jurisdiction of the undersigned Magistrate Judge. [D.E. 84].

# I.    BACKGROUND

In 2006, Mauricio Capuano ("Mr. Capuano"), as the sole shareholder, incorporated his company, GSA Realty.  [D.E. 1 at ¶¶ 10, 12].  A few months after GSA Realty's formation, the company purchased real property (the "Property") in Miami for $2,600,000.[2]  *See id.* at ¶ 11.  In 2007, Mr. Capuano separated from his wife, Mrs. Capuano, and remained estranged from her until his death in January 2014.  *See id.* at ¶ 13.  After the separation, Mr. Capuano began a romantic relationship with Plaintiff, in Guatemala, which resulted in a daughter who was born in November 2008.   In the meantime, Mrs. Capuano moved to the Netherlands.

Several years later, in October 2013, Travis Schirato ("Mr. Schiarto"), Mrs. Capuano's nephew and a convicted felon, executed a purchase and sale agreement, to sell GSA Realty's Miami property to Laurinus Pierre and Michele Jean Gilles for $2,300,000.  At the time, Mr. Schirato held no position with GSA Realty nor did he have any ownership interest in the company.  A few months later, Mr. Capuano died in Miami on January 2, 2014.  According to Mr. Capuano's 2009 will – submitted for probate in Guatemala – he devised half of his estate to Plaintiff and the other half to his adult daughter, Graziela Capuano.[3]

After Mr. Capuano's death, Plaintiff alleges that Defendants held a series of telephone calls in which they discussed the pending sale of the Property, agreed to

---

[2]     The Property is located at 12901 Biscayne Bay Drive, Miami, Florida 33161.

[3]     Mr. Capuano executed the will five years prior to his death on August 7, 2009.

embezzle the proceeds from GSA Realty, and to conceal the embezzlement through a series of transfers and financial transactions. Purporting to act on GSA Realty's behalf, Mr. Schirato, nearly three months after Mr. Capuano's death, attended the closing of the sale, receiving $300,000 on behalf of GSA Realty and obtaining a promissory note from the buyers for $2,000,000, also payable to GSA Realty.

Immediately after the closing on March 25, 2014, Mr. Schirato transferred the $300,000 from GSA Realty to himself or corporate entities under his control. Mr. Schirato then transferred $114,000, out of the $300,000, to Mrs. Capuano who then transferred those funds to a personal bank account in Guatemala. Plaintiff believes that, thereafter, Mr. Schirato transferred $26,666.68 in interest payments on the property to himself or his corporate entities. Subsequently, without any authority to do so, Mr. Schirato advised the buyers, by letter, that servicing of the loan was being transferred from GSA Realty to Mr. Schirato, individually. After the buyers sent him another series of interest payments, totaling $40,000.02, Mr. Schirato sent them another letter, stating that he had assigned the next thirty-six payments to two individuals in New York.

A short time later, on August 20, 2014, Mr. Schirato executed a balloon note endorsement and assignment of mortgage deed, in exchange for a substantial sum, purporting to assign the note from GSA Realty to the individuals in New York. Thereafter, Plaintiff alleges that Mrs. Capuano and Mr. Schirato persisted in conspiring to hide the embezzled funds, with Mrs. Capuano making false

representations to the probate court and further impeding the recovery of estate assets, continuously through the time of the filing of Plaintiff's complaint.

## II.  APPLICABLE PRINCIPLES AND LAW

In ruling on Defendant's motion to dismiss, the Court takes the allegations in the complaint as true and construes the allegations "in the light most favorable to the [Plaintiff]." *Rivell v. Private Health Care Systems, Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)). "When considering a motion to dismiss, all facts set forth in [Plaintiff's] complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). A motion to dismiss under Rule 12(b)(6) "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does

not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Factual content gives a claim facial plausibility. *Id.* "[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [the plaintiff]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

## III.   ANALYSIS

On July 11, 2019, the Court granted in part and denied in part Defendant's motion for summary judgment.  [D.E. 129].  In the interests of justice, the Court dismissed Plaintiff's federal RICO claims and gave Plaintiff leave to refile her complaint to set forth any viable causes of action to pair with her conspiracy claim. Plaintiff amended her complaint on August 15, 2019 [D.E. 138] and included claims for civil theft, constructive fraud, conversion, breach of fiduciary duty, and conspiracy.  Defendant seeks to dismiss Plaintiff's complaint because (1) the Court lacks diversity jurisdiction, (2) the probate exception applies, (3) *res judicata* precludes Plaintiff's claims, (4) Plaintiff failed to state a claim for which relief can be granted, and (5) the Court should abstain from exercising jurisdiction pursuant to the *Colorado River* doctrine.  We will address each argument in turn.

### A.   *Diversity Jurisdiction*

Defendant's leading argument is that the Court lacks subject matter jurisdiction because, without any federal question, there is not complete diversity between the parties.  Plaintiff alleges that she is a citizen of Columbia and a

resident of Guatemala whereas Defendant is "citizen of the United States, whose last established domicile was the State of Florida." [D.E. 138 at ¶¶ 2-3]. Defendant takes issue with this allegation because Defendant is domiciled in the Netherlands, not Florida. Defendant then reasons that subject matter jurisdiction does not exist because, without a federal question presented, Plaintiff – as a citizen of Columbia and a resident of Guatemala – cannot sue another alien in federal court. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011) ("[A]lienage jurisdiction prohibits an alien from suiting another alien in federal court unless the suit includes U.S. citizens as plaintiffs and defendants."). Because Defendant is domiciled outside the United States with no intention of returning, Defendant requests that this case be dismissed for lack of subject matter jurisdiction.

We need not give much consideration to Defendant's argument because Defendant already presented it in November 2019 when requesting a motion to stay discovery. The same reasoning applies now, as it did then, because Defendant's statements with respect her domicile is inconsistent with her prior statements in this case. When Plaintiff filed her initial complaint in January 2018, she alleged that Defendant was a resident of the Netherlands. [D.E. 1]. This is consistent with Defendant's representation in her motion to dismiss for lack of subject matter jurisdiction. However, when Defendant filed her answer to Plaintiff's initial complaint in January 2019, Defendant denied that she was domiciled in the Netherlands. [D.E. 54]. It is therefore uncertain as to *where* Defendant is

domiciled because she previously denied being domiciled in the Netherlands and now claims the exact opposite in her motion to dismiss.

Given the lack of clarity on where Defendant is domiciled, the Court will not dismiss Plaintiff's complaint solely for a lack of subject matter jurisdiction because it would be unwise and premature to make this determination until Defendant's domicile can be conclusively determined. Defendant's argument is also unavailing because – even if the parties are not completely diverse – a federal court has the discretion to exercise supplemental jurisdiction over non-diverse state law claims when the court dismissed those claims over which it had original jurisdiction. *See Smith v. City of Tallahassee*, 2019 WL 5205969, at *4 (11th Cir. Oct. 16, 2019) ("A federal court has supplemental jurisdiction over state law claims when they 'are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'") (quoting 28 U.S.C. § 1367(a)); *Palmer v. Hospital Authority of Randolph County,* 22 F.3d 1559, 1567 (11th Cir. 1994). Therefore, Defendant's motion to dismiss for lack of diversity jurisdiction is **DENIED** because the Court shall retain jurisdiction for now because of the time expended litigating this case, judicial economy, convenience, fairness, and comity. *See Smith*, 2019 WL 5205969, at *4 ("The court should consider 'judicial economy, convenience, fairness, and comity' in exercising its supplemental jurisdiction.") (quoting *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002)).

### B.    *The Probate Exception*

Defendant's second argument is that this case should be dismissed because the probate exception applies.  Federal courts are courts of limited jurisdiction, which possess only the power authorized by the Constitution and by statute.  *See Kokkenon v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Title 28 § 1332 provides for original jurisdiction over civil cases wherein the amount in controversy exceeds $75,000 and the parties are citizens of different states.  28 U.S.C. § 1332.  "Federal courts, however, have recognized an exception to federal diversity jurisdiction in cases involving state probate matters."  *Stuart v. Hatcher*, 757 F. App'x 807, 809 (11th Cir.  2018).  The probate exception is narrow, applying only to cases that would require a federal court to (1) probate a will, (2) administer an estate, or (3) "dispose of property that is in the custody of a state probate court."  *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006); *see also Stuart*, 2018 WL 6329699, at *1.  Federal courts are free to adjudicate probate or estate-related cases that do not fall within the bounds of those three categories.  *See Marshall*, 547 U.S. at 312.

The general rule in determining whether a claim falls under the probate exception is whether a particular claim and the relief it seeks to *interfere* with the property that is in the possession of a state probate court.  *See Markham v. Allen*, 326 U.S. 490, 494 (1946); *see also Marshall*, 547 U.S. at 311 ("[W]e comprehend the 'interference' language in *Markham* as essentially a reiteration of the general principle that, when one court is exercising *in*

*rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*.").  District courts in the Eleventh Circuit have no jurisdiction over actions seeking a valuation of estate assets, a transfer of property that is under probate, or "a premature accounting of an estate still in probate." *Turton n v. Turton*, 644 F.2d 344, 348 (5th Cir. 1981); *Mich. Tech Fund v. Century Nat'l Bank of Broward*, 680 F.2d 736, 741 (11th Cir. 1982).

On the other hand, federal courts can adjudicate claims relating to state-court probate or estate cases so long as adjudicating the claim does not require the federal court to interfere with the property under the control of the state court.  *See Markham*, 326 U.S. at 494 ("[W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.").  As the Eleventh Circuit has explained:

> [A] creditor may obtain a federal judgment that he has a valid claim against the estate for one thousand dollars, or a devisee may obtain a declaratory judgment that a probated will entitles him to twenty percent of the net estate.  What the federal court may not do, however, is to order payment of the creditor's thousand dollars, because that would be an assumption of control over property under probate.  Similarly, the court may not find that the devisee's twenty percent share is worth $20,000, because it is the province of the probate court to determine the dollar amount of the net estate after liquidating assets and paying claims.  Instead, *the federal court is limited to declaring the validity of the asserted claims*, leaving the claimants to assert their federal judgments as res judicata in the probate court.

*Turton*, 644 F.2d at 347 (emphasis added).

In determining whether a suit interferes with property controlled by a probate court, federal courts "look past the plaintiff's theory of relief and consider the 'effect a judgment would have on the jurisdiction of the probate court.'" *Stuart*, 2018 WL 6329699, at *1 (quoting *Turton*, 644 F.2d at 347). The central inquiry is therefore whether a district court, "as a court of equity, can fashion the relief granted so that the relief would be within [the court's] jurisdiction and would not interfere with the jurisdiction of the probate court." *Hudson v. Abercrombie*, 682 F. Supp. 1218, 1220 (N.D. Ga. 1987) (citing *Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33, 45–47 (1909)).

Defendant argues that the probate exception applies in this case because Plaintiff seeks damages for the Florida estate that is now in the custody of the probate court. [D.E. 138 at ¶ 2] ("In bringing this action, Plaintiff seeks to return the stolen shares, funds, and personal property, or the value of such items, to the Estate, along with any applicable additional or special damages awarded by the Court."). Defendant also claims that unlike, Plaintiff's prior allegations, the amended complaint now gives rise to the probate exception because the curator has not completed the estate's administration. This includes the final accounting and the petition for discharge. Therefore, until the estate proceedings conclude in probate court, Defendant suggests that this lawsuit interferes with the same property at issue and that this case must be dismissed.

This is the second time that Defendant has relied on the probate exception in seeking to dismiss Plaintiff's complaint. On January 9, 2019, Judge Scola rejected

Defendant's argument that the probate exception applied for three reasons: (1) that the complaint does not seek to probate or annul the decedent's will, or otherwise administer the estate, (2) that the claims presented do not seek to dispose of property that is in the custody of the probate court, and (3) that the probate exception does not apply to federal RICO claims. [D.E. 42]. There is no dispute that the third exception is no longer at issue since Plaintiff refiled her complaint with only state law claims. And it is equally clear that the first exception does not apply because Plaintiff's complaint does not seek to probate or interpret the decedent's will. The only issue is the second exception: whether the property in this case is the same as the property in the custody of the probate court.

Defendant relies primarily on the district court's decision in *Fisher v. PNC Bank N.A.*, 2019 WL 4697593, at *2 (S.D. Fla. Sept. 25, 2019). In *Fisher*, the plaintiff alleged that the defendant, PNC Bank, mishandled her deceased mother's bank account by either knowingly or negligently allowing the plaintiff's brother to steal from it. The plaintiff claimed that, before her mother had an account at PNC Bank, the mother had an account at Royal Bank of Canada. This account, dating back to the 1980s, included $150,000 of the plaintiff's money. The mother then transferred all the money in the Royal Bank account to the PNC Bank account.

The district court held that, in looking past the plaintiff's theory of relief and considering the effect of a judgment, it was evident that the plaintiff was attempting to circumvent the normal probate process with a claim against PNC Bank. The court also stated that the alleged theft occurred in a bank account that

the mother owned – as opposed to the plaintiff – and that there were no allegations that the brother (i.e. the wrongdoer) completely depleted the funds from the mother's account. There were also no allegations that PNC Bank stole or enabled the brother to steal all of the $150,000 from the mother's account. The court then dismissed the case and closed it, in part, because Plaintiff lacked standing. *See Fisher v. PNC Bank N.A.*, 2019 WL 4697593, at *2 (S.D. Fla. Sept. 25, 2019) ("Plaintiff, who is not the personal representative of the estate, has no standing to bring claims on behalf of the estate against the Defendants.") (citing *Tennyson v. ASCAP*, 477 F. App'x 608, 610-11 (11th Cir. 2012)). The court further reasoned that the mother's estate was already seeking relief against PNC Bank for malfeasance and that "any ruling by this Court in this case would in fact implicate the ultimate accounting of the estate, as any funds recovered from the litigation between the estate and PNC Bank would be subject to distribution among the beneficiaries of the estate." *Id*. at *2. As such, the court granted PNC Bank's motion to dismiss because the probate exception applied.

Defendant claims that the same reasoning applies to the facts of this case because Plaintiff has already filed an action against Defendant in probate court. Defendant also contends that there are ongoing proceedings against Mr. Schirato and that any funds recovered will be subject to distribution among the estate beneficiaries. Defendant then reasons that this will implicate the estate's final accounting and that, until the administration of the estate is complete, the estate property remains under the control of the probate court. Accordingly, Defendant

claims that all of the property at issue is either in the custody of the probate court or will be at the end of the proceedings against Mr. Schirato, and therefore the probate exception applies to the facts of this case.

The question presented is whether the property that Plaintiff seeks (i.e. the return of stolen shares, funds, and personal property) constitutes the same property at issue in the probate court. If so, then the probate exception applies and Defendant's motion to dismiss should be granted. But, if not, the property sought is considered separate and the probate exception is inapplicable.

A case that better answers the question of whether a request for the return of property to an estate implicates the probate exception is a district court's decision in *Marcus v. Quattrocchi*, 715 F. Supp. 2d 524, 534 (S.D.N.Y. 2010). There, a group of beneficiaries filed claims of fraud and breach of fiduciary duty against a former personal representative so that the latter would return property to a trust that was in the possession of the defendant. The district court rejected the defendant's argument that the probate exception applied because requests to return property – as opposed to the disposition of property in a probate proceeding – does not fall within the probate exception:

> Requests to return property to an estate or trust, rather than to dispose of property currently part of an estate or trust, do not fall within the probate exception because the *res* at issue is not within the probate court's jurisdiction if it is was not part of the estate at the time of the decedent's death. *See Capponi v. Murphy*, 772 F. Supp. 2d 457, 466 (S.D.N.Y. 2009) ("Where a plaintiff seeks to recover assets allegedly in a defendant's possession so that they may be returned to the estate, the probate exception does not apply." (internal quotation marks and brackets omitted)); *Abercrombie v. Andrew Coll.,* 438 F. Supp. 2d 243, 255–56 (S.D.N.Y. 2006) (finding that claim regarding

validity of property deed did "not ask the [c]ourt to decide how to distribute any assets of [decedent's] estate, but only to determine whether additional assets . . . should be added to the estate, thus making the probate exception inapplicable."); *cf. Groman v. Cola*, 2007 WL 3340922, at \*5-\*6 (S.D.N.Y. Nov. 7, 2007) (finding that action seeking to determine the true value of an asset possessed by the decedent at death and sold as an estate asset fell within the probate exception because the asset was part of the estate).

*Marcus*, 715 F. Supp. 2d at 534; *see also Parks v. Kiewel*, 2015 WL 7295457, at \*4 (D. Kan. Nov. 18, 2015) ("[T]he disputed property was transferred out of Emily's estate either prior to or at the time of her death. As such, the requests to return the property and set aside the transfers do not fall within the probate exception.").

The same reasoning applies in this case because Plaintiff alleges that the property she seeks is *not* in the Defendant's control. *See, e.g., Glickstein v. Sun Bank/Miami, N.A.*, 922 F.2d 666, 673 (11th Cir. 1991), *abrogated by Saxton v. ACF Indus., Inc.*, 254 F.3d 959 (11th Cir. 2001) (rejecting the applicability of the probate exception because "the assets at issue in this case are in the control of the defendants rather than the probate court."). Defendant takes issue with this allegation because it is simply not true. But, given that Plaintiff's factual allegations must be accepted as true at the motion to dismiss stage, Defendant's argument is far from compelling. Defendant then suggests that, even if we accept Plaintiff's allegations as true, the probate exception still applies because any property recovered in this case may be subject to distribution among the beneficiaries of the estate. While that may be true, the relief Plaintiff seeks is solely limited to the recovery of assets that Defendant allegedly stole. This case does not seek, for example, a determination of how assets should be distributed. *See*

14

*Abercrombie*, 438 F. Supp. 2d at 256 (S.D.N.Y. 2006) (finding that the probate exception does not apply because the "case does not ask the Court to decide how to distribute any assets of Ms. Murphy's estate, but only to determine whether additional assets, i.e., the Property, should be added to the estate, thus making the probate exception inapplicable."). Therefore, the relief sought does not in any way interfere with the probate court proceedings because Plaintiff merely seeks the return of assets that are in the Defendant's possession. *See, e.g., Giardina v. Fontana,* 733 F.2d 1047, 1050–51 (2d Cir. 1984) ("The principal relief requested was a declaratory judgment that the assignment was null and void and/or a rescission of the assignment. This relief could be granted without in any way interfering with the probate proceedings in Florida or the estate being administered.").

Defendant then relies again on the holding in *Fisher* to argue that the assets Plaintiff seeks would require an accounting of the decedent's estate and interfere with the probate court proceedings. *Fisher* is distinguishable, in part, because it relied on a finding that the plaintiff lacked *standing* to bring claims on behalf of the state against the defendants. *Fisher* is also not compelling because it only includes a single sentence of analysis and fails to cite any relevant cases for the contention that the mere accounting of an estate divests a federal court of jurisdiction if assets are later distributed to the decedent's beneficiaries. In addition, the plaintiff in *Fisher* and the estate in the underlying probate action sought the same relief whereas, in this case, Plaintiff seeks relief primarily for Defendant's actions *prior* to

her appearance as the personal representative of the estate. *Fisher* is therefore distinguishable in multiple ways and less relevant to the question presented.

A more persuasive case is the Eleventh Circuit's decision in *Michigan Tech Fund v. Century Nat'l Bank,* 680 F.2d 736, 741 (11th Cir. 1982), where the Court allowed a suit against an estate that required a construction of a will. More specifically, the Court permitted the district court to entertain an action against a decedent's estate that sought a declaration that the will conveyed certain assets to the plaintiffs. In narrowly construing the probate exception, the Court reasoned that district courts have jurisdiction to interpret wills and to even resolve claims against estates despite pending probate proceedings because "[c]onsideration of [these] claim[s] . . . will not interfere with property under the state probate court's control." *Id*. at 741.[4]

While the facts in *Michigan Tech Fund* are obviously distinguishable, the case is instructive because it shows how narrowly the Eleventh Circuit construes the probate exception. Defendant advocates for a broad interpretation with an argument that an accounting of the assets will one day interfere with the probate court proceedings. That is, Defendant suggests that a federal court lacks jurisdiction because any property recovered will later require an accounting of the assets in probate court and a decision on how those assets will be distributed to beneficiaries.

---

[4] The court also allowed the plaintiffs to assert a claim against the estate for breach of a promise to make a will.

The problem with Defendant's argument is that it fails to rely on any other case to support her position and "the majority of the relevant jurisprudence holds this request to constitute an equitable relief outside the scope of the probate exception." *Tartak v. Del Palacio*, 2010 WL 3960572, at *11 (D.P.R. Sept. 30, 2010); *see also Great West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002) ("[E]quitable accounting does not seek any particular res or fund money"). Defendant's argument is also unpersuasive because it relies on matters that are beyond the limits of this case. This action is merely concerned with assets that Defendant purportedly stole in a conspiracy with Mr. Schirato. If Plaintiff prevails, the probate court – not the undersigned – will determine how those assets will be distributed. There is, in other words, no overlap between this case and the probate court proceedings because the property Plaintiff seeks is entirely separate. Defendant claims that the matters are related and that the probate exception applies. We agree that the property Plaintiff seeks is, in some respects, related to the estate but "the probate exception is narrow, and should not be used as an excuse to decline to exercise jurisdiction over actions merely because they involve 'probate related matters.'" *Marcus*, 715 F. Supp. 2d at 531 (citing *Marshall*, 541 U.S. at 293). Because this case merely seeks the return of property that is in the Defendant's possession and does not in any way interfere with the probate court proceedings, the probate exception does not apply to the facts of this case and Defendant's motion to dismiss is **DENIED**.

## C.   _Res Judicata_

Defendant's third argument is that this case should be dismissed because of _res judicata_. Defendant claims that the state probate matter includes the same claims as this action, including the same parties and a final judgment on the merits. While Mr. Schirato is not a party to the state case, Defendant contends that this is inconsequential because the inclusion of an additional party does not defeat _res judicata. See Tharpe v. Nationstar Mortg., LLC_, 2016 WL 7668478, at *4 (S.D. Fla. Oct. 21, 2016) ("[T]he exclusion of additional parties to either action does not remedy the preclusive effect of Plaintiff's and Nationstar's inclusion in both actions."). As such, Defendants requests that the Court dismiss every count in Plaintiff's complaint.

"Under _res judicata_, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." _In re Piper Aircraft Corp._, 244 F.3d 1289, 1296 (11th Cir. 2001) (citing _Allen v. McCurry,_ 449 U.S. 90, 94 (1980)). Federal courts must apply the "_res judicata_ principles of the law of the state whose decision is set up as a bar to further litigation." _Kizzire v. Baptist Health System Inc._, 441 F.3d 1306, 1308 (11th Cir. 2006). The elements under the doctrine are: (1) identity of the things sued for; (2) identity of the cause of action; (3) identity of the parties and (4) identity of the quality in the person for or against whom the claims are made. _Jenkins v. Lennar Corp.,_ 972 So. 2d 1064, 1065 (Fla. 3d DCA 2008). "At all times, the burden is on the party asserting res judicata . . . to show that the later-

18

filed suit is barred." *Ragsdale v. Rubbermaid*, Inc. 193 F.3d 1235, 1238 (11th Cir. 1999).

However, *res judicata* extends only to "the facts and conditions as they existed at the time the judgment was rendered, or more correctly speaking, at the time the issues in the first action were made, and to the legal rights and relations of the parties as fixed by the facts determined by that judgment." *Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass'n,* 245 So. 2d 625, 628 (Fla. 1971). "When other facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the respective parties, the issues are no longer the same and the former judgment cannot be pleaded in bar of the second action." *Id.*

Generally, *res judicata* "is an affirmative defense that should be raised under Rule 8(c)," but "a party may raise a res judicata defense by motion rather than by answer where the defense's existence can be judged on the face of the complaint." *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982). Although analysis of a Rule 12(b)(6) motion is limited primarily to the face of the complaint and the attachments thereto, a court may consider documents attached to the motion to dismiss if they are referred to in the complaint and are central to a plaintiff's claim. *See Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1368–69 (11th Cir. 1997) (citation omitted). However, when a court considers matters outside the pleadings, the Rule 12(b)(6) motion converts into a Rule 56 motion for summary judgment. *See Garcia v. Copenhaver, Bell & Assocs.,* 104

F.3d 1256, 1266 n.11 (11th Cir.1997). The court must notify the parties and give them ten days to submit "any relevant evidence and arguments in support or opposition to the merits." *Id.*(citation omitted).

Defendant's motion fails, at the outset, because *res judicata* cannot be judged on the face of Plaintiff's complaint. Not to be deterred, Defendant then claims that the cases are related because "they involved the same things being sued for here: the Estate's property generally and the GSA Property (and proceeds therefrom) specifically." [D.E. 149 at 9]. But, this representation, without any other evidence, falls woefully short of the requirements for *res judicata* to apply because it is entirely unclear how and to what extent this case is the same as the proceedings in state court. The motion also fails because it omits any comparative examination of the claims in the probate court with Plaintiff's amended complaint. And making matters worse, Defendant fails to present any authority that allows for a *res judicata* defense to succeed when the items to be sued for (i.e. property) are only generically related. That is, according to Defendant's own arguments, the property in the proceedings are *not* the same – they are only similar to the extent they each relate to the return or administration of the decedent's assets. Because Defendant has failed to explain how the two cases include the same claims and this *res judicata* defense cannot be adjudicated on the face of Plaintiff's complaint, Defendant's motion to dismiss Plaintiff's complaint is **DENIED**.

**D.** _**Failure to State a Claim**_

_(1) Civil Theft_

Turning to Defendant's next arguments that are premised on Plaintiff's failure to state a claim, Defendant argues that Plaintiff failed to serve a written demand letter to support a claim for civil theft in count one. Florida Statute 772.11 provides in relevant part the following:

> Before filing an action for damages under this section, the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section. If the person to whom a written demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft or exploitation by the person making the written demand.

Fla. Stat. § 772.11(1) (emphasis added); _Korman v. Iglesias,_ 736 F. Supp. 261, 267 (S.D. Fla. 1990) ("[B]efore an action for civil theft is filed the plaintiff must make written demand for payment upon the defendant, and allow 30 days for payment."). Defendant claims that, contrary to Plaintiff's allegations, Plaintiff made a written demand on August 22, 2019 _after_ she filed her amended complaint on August 15, 2019. Because Plaintiff failed to comply with the requirements of the statute, Defendant concludes that Plaintiff's civil theft claim should be dismissed.

Plaintiff concedes in her response that she did not strictly comply with Florida law in giving Defendant notice of her civil theft claim because of the deadline to amend her complaint. Plaintiff argues, however, that notice was provided and that the complaint includes the necessary allegations. [D.E. 138 at ¶ 60] ("Pauline and Travis have been provided with notice and a demand for payment

in accordance with Section 772.11, Florida Statutes."). Plaintiff therefore concludes that any failure to strictly comply with Fla. Stat. § 772.11 is not grounds for dismissal because Plaintiff has substantially complied with the statute.

We agree with Defendant that Plaintiff failed to strictly comply with Fla. Stat. § 772.11. We disagree, however, that Plaintiff's failure to serve a written demand letter thirty days before filing her amended complaint is grounds for dismissal of her civil theft claim. "[T]he demand requirement in the statute is not substantive because it does not relate to the activities that give rise to the cause of action itself. It exists to 'encourage negotiation and settlement prior to the commencement of litigation.'" *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1145 (M.D. Fla. 2018) (quoting *In re Tadlock*, 2010 WL 8320065, at *5 (Bankr. M.D. Fla. Sept. 1, 2010)). That is why courts in our Circuit have enforced the demand requirement leniently and routinely denied motions to dismiss nonconforming claims. *See, e.g.*, *Inglis v. Wells Fargo Bank N.A.*, 2017 WL 637485, at *7 (M.D. Fla. Feb. 16, 2017) ("Assuming this fails to strictly comply with the requirement of Florida Statute § 772.11, the Court finds no prejudice to Wells Fargo from the non-compliance."); *Deman Data Sys., LLC v. Schessel*, 2014 WL 6751195, at *23 (M.D. Fla. Dec. 1, 2014), *amended on reconsideration*, 2015 WL 58650 (M.D. Fla. Jan. 5, 2015). Given the procedural posture of this case and the parties' familiarity with the acts complained of, Plaintiff's failure to strictly comply with the pre-suit notice requirement is harmless and Defendant's motion to dismiss for Plaintiff's failure to strictly comply with Fla. Stat. § 772.11 is **DENIED**.

Defendant also argues that Plaintiff's civil theft claim should be dismissed because it fails to include an allegation that Defendant acted with felonious intent. To state a claim for civil theft under Florida law, a plaintiff must allege that a defendant "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [plaintiff's] property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [plaintiff] of [his] right to or a benefit from the property or appropriate the property to [defendant's] own use or to the use of any person not entitled to the property." *United Technologies Corp. v. Mazer,* 556 F.3d 1260, 1270 (11th Cir. 2009) (citing Fla. Stat. §§ 772.11, 812.014); *see also Almeida v. Amazon.com, Inc.,* 456 F.3d 1316, 1326–27 (11th Cir. 2006); *Gersh v. Cofman,* 769 So. 2d 407, 409 (Fla. 4th DCA 2000) ("In order to establish an action for civil theft, the claimant must prove the statutory elements of theft, as well as criminal intent.").

Plaintiff's response is that Defendant's motion lacks merit because she alleges that "Pauline and Travis intended to and did commit a pattern of illegal and felonious acts in order to permanently deprive the Estate . . . to their own use." [D.E. 138 at ¶ 58]. Defendant complains that this allegation is too conclusory and that it fails to identify any specific evidence to support a civil theft claim. We disagree, however, that the civil theft claim should be dismissed for this reason because the remaining allegations in the complaint show how Defendant committed perjury, engaged in financial transactions to steal funds, and concealed her activities in a conspiracy with Mr. Schirato. Therefore, while the sentence that Defendant identifies is itself conclusory, the allegation of felonious intent is well-

supported when joined with the remaining allegations in Plaintiff's complaint. As such, Defendant's motion to dismiss Plaintiff's civil theft claim for failing to allege felonious intent is **DENIED**.

Defendant's final argument, as to count one, is that it should be dismissed because it fails to allege an immediate right to possession. Defendant claims that Plaintiff cannot allege an immediate right to possession because the assets are the property of the Florida estate. "Under Florida law, a plaintiff in an action for conversion or civil theft must establish possession or an immediate right to possession of the converted property at the time of the conversion." *United States v. Bailey*, 419 F.3d 1208, 1212 (11th Cir. 2005).[5]

Defendant's argument is unpersuasive because, while Plaintiff has not alleged that she had an immediate right to possession, she has shown that – as a beneficiary of the decedent's will – she was entitled to possession of half of the estate's assets at the time of the conversion. If Plaintiff had alleged that Defendant converted the property *prior* to Mr. Capuano's death, then Defendant would have a more compelling argument that Plaintiff did not have a right to possession at the time of the alleged conversion because Plaintiff's interest would have been a mere expectancy. *See, e.g.*, *Seropian v. Wachovia Bank, N.A.*, 2010 WL 2949658, at *3 (S.D. Fla. July 26, 2010) (dismissing plaintiffs' civil theft claim because plaintiffs alleged that the civil theft occurred in December of 2008 when the decedent was

---

[5] The Florida common-law rule is in contrast to the "modern view of conversion," which allows for an action where the plaintiff has "some property interest" in the allegedly converted goods. *Bailey,* 419 F.3d at 1214.

still living and therefore "[p]laintiffs allegations fail to meet the requirement that [p]laintiffs had possession of the property or an immediate right to possession at the time of the conversion."); *see also Balcor Property Management, Inc. v. Ahronovitz,* 634 So. 2d 277, 280 (Fla. 4th DCA 1994) (finding that a mere expectancy cannot form the basis for a civil theft claim). Because the estate's assets are allegedly in the Defendant's possession and Plaintiff had a right to possess those assets at the time of conversion, Plaintiff has presented a viable civil theft claim and Defendant's motion to dismiss count one is **DENIED**.

### (2) Conversion

Defendant's next argument is that Plaintiff's conversion claim in count three fails because Florida law requires a party that was previously in rightful possession to demand a return of his or her party. Defendant claims that Plaintiff failed to allege a return of her assets and that, according to Plaintiff's own allegations, her conversion claim cannot stand. Thus, Defendant concludes that Plaintiff's failure to allege a demand for the return of her property warrants dismissal of her conversion claim.

Conversion is an unauthorized act that deprives a person of his property permanently or for an indefinite time. *See Marine Transp. Servs. Sea-Barge Group, Inc. v. Python High Performance Marine Corp.,* 16 F.3d 1133, 1140 (11th Cir. 1994) ("In Florida, the tort of conversion is an unauthorized act which deprives another of his property permanently for an indefinite time."). "A conversion occurs when a person who has a right to possession of property demands the property's

return and the demand is not or cannot be met." *Id.* Before a conversion can occur, a party that was previously in rightful possession of another party's funds must be informed by the other party that: "1) continued possession of the funds is no longer permitted; 2) a demand for return of the funds is necessary; and 3) the party holding the funds must fail to comply with the demand." *Black Bus. Inv. Fund of Cent. Fla., Inc. v. Fla. Dep't of Econ. Opportunity*, 178 So.3d 931, 937 (Fla. 1st DCA 2015).

Here, Defendant's argument is well taken because there is no allegation in the amended complaint where Plaintiff alleges that she made a demand for the return of her assets. The only allegation that Plaintiff identifies is in paragraph seventy-two of her complaint where she alleges that "[t]he Estate (and Zoraida, as beneficiary) has thus been deprived of shares of GSA Realty and personal property in an amount exceeding $2,000,000.00, with the final accounting of damages to be determined at trial." [D.E. 138 at ¶ 138]. But, this allegation is not a demand for the return of assets. The facts of this case also do not fit within the exception to the general rule where a demand for a return of assets may be omitted where the demand would be futile.[6] This exception is most commonly used when there are intangible business interests. *See, e.g.*, *Joe Hand Promotions, Inc. v. Hart*, 2012 WL 1289731, at *2 (S.D. Fla. Apr. 16, 2012) ("Since we are dealing the alleged wrongful use of a broadcast, which cannot be returned once wrongfully shown, a demand for return of the wrongfully converted property would be futile.").

---

[6]     Plaintiff also never alleges that a demand would have been futile.

Because Plaintiff is missing an essential element of her conversion claim that can be remedied in an amended complaint, Defendant's motion to dismiss count three is **GRANTED without prejudice**.

<em>(3) Constructive Fraud</em>

Count two of Plaintiff's complaint alleges that Defendant committed constructive fraud. Defendant argues that this claim fails as a matter of law because the amended complaint never alleges that the parties had a fiduciary relationship. Plaintiff merely alleges that "[b]y virtue of her position as the estranged, but legally-recognized, wife of Mauricio, [Defendant] enjoyed a confidential of fiduciary relationship with Mauricio, GSA Realty, and, subsequent to Mauricio's passing, the Estate." [D.E. 138 at ¶64]. Defendant argues that this fails to establish a fiduciary relationship because – even if accepted as true – the status of an estranged wife does not make Defendant a fiduciary to the estate's assets. Defendant suggests that Plaintiff's allegations are fatal to Plaintiff's constructive fraud claim because even "[i]n an arms length transaction . . . there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own due diligence have discovered." *Lanz v. Resolution Trust Corp.* 764 F. Supp. 176, 179 (S.D. Fla 1991).

Plaintiff's response is that her complaint meets all the requirements for a constructive fraud claim because, after Mr. Capuano died, Defendant had a duty as the estranged wife of the decedent to not interfere with the administration of the estate. Plaintiff alleges, for instance, that Defendant exploited her position as Mr.

Capuano's estranged wife to strip the estate of assets and to conceal her unlawful activity.  Plaintiff also argues that the question of whether a fiduciary relationship exists is a fact-intensive inquiry and that the disposition of this claim is generally inappropriate on a motion to dismiss.  *See My Classified Ads, L.L.C. v. Greg Welteroth Holding Inc.*, 2015 WL 1169857, at *9 (M.D. Fla. Mar. 13, 2015) ("The determination of whether a fiduciary duty did in fact exist, and whether it was based on an implied relationship or express relationship created by principal agency relationship, is better suited for the summary judgment stage of the proceedings.") (citations omitted).  Alternatively, even if the Court decides to adjudicate this question on a motion to dismiss, Plaintiff claims that Defendant was, at one point, the personal representative of the estate and that this position created a fiduciary duty under Florida law.   Because Defendant breached her duty as a fiduciary in more ways than one, Plaintiff concludes that Defendant's motion, as to Plaintiff's constructive fraud claim, lacks merit.

"Constructive fraud exists where a duty arising from a confidential or fiduciary relationship has been abused, or where an unconscionable advantage has been taken.   Florida courts have construed the term 'fiduciary or confidential relation' as being very broad." *Linville v. Ginn Real Estate Co., LLC,* 697 F. Supp. 2d 1302, 1309 (M.D. Fla.  2010) (citation omitted).  The Florida Supreme Court has stated, for example, that the relation and duties involved need not be legal; instead, "they may be moral, social, domestic, or personal." *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002)).  A fiduciary or confidential relationship exists where "confidence is

reposed by one party and a trust is accepted by the other, or where confidence has been acquired and abused." *Id*. Therefore, "[t]he term 'fiduciary or confidential relation' is a very broad one." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005) (quoting *Quinn v. Phipps*, 113 So. 419, 420 (Fla. 1927)).

To state a claim for a breach of a fiduciary or confidential relationship, "a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Watkins v. NCNB Nat. Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993) (quoting *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989)). "The fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Lanz v. Resolution Trust Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991).

A cause of action for constructive fraud, however, does not require "induced reliance," nor does it "necessarily require the Defendant to gain an unfair advantage." *Kapila v. Militzok*, 2015 WL 7272761, at *5 (S.D. Fla. Nov. 18, 2015) (citing *Levy v. Levy*, 862 So. 2d 48, 53 (Fla. 3d DCA 2003)). Rather, constructive fraud "may be based on a representation or concealment, or the fraud may consist of taking an improper advantage of the fiduciary relationship at the expense of the confiding party." *Beers v. Beers*, 724 So. 2d 109, 116–17 (Fla. 5th DCA 1998).

Importantly, a fiduciary relationship may be implied and "premised upon the specific factual situation surrounding the transaction and the relationship of the parties." *Doe*, 814 So. 2d at 374 (quoting *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994)). "Unless the relationship is formed through an express agreement, whether a fiduciary relationship exists is necessarily fact-specific to a particular case." *Hansen v. Premier Aviation Holdings, LLC*, 2017 WL 8893119, at *4 (S.D. Fla. Nov. 21, 2017). "'Therefore a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)' because it 'is often impossible to say that [a] plaintiff will be unable to prove the existence of a fiduciary relationship.'" *Reuss v. Orlando Health, Inc.*, 140 F. Supp. 3d 1299, 1304 (M.D. Fla 2015) (quoting *Childers v. N.Y. Presbyterian Hosp.*, 36 F. Supp. 3d 292, 300 (S.D.N.Y. 2014)).[7]

Plaintiff's constructive fraud claim fails because it is unclear how Defendant – as the estranged wife of the decedent – had a fiduciary relationship to protect the estate's assets. A fiduciary relationship is, by definition, a position of trust where one is "subject to legal responsibility for harm flowing from a breach of fiduciary duty imposed by the relationship." *Gracey v. Eaker,* 837 So. 2d 348, 352 (Fla. 2002). If Defendant was merely the estranged wife of Mr. Capuano, that would, if anything, cut against a finding of a fiduciary relationship. Plaintiff also fails to rely

---

[7]    Unlike actual fraud, constructive fraud "does not require a showing of intent or of a misrepresentation or concealment and thus a claim for constructive fraud need only meet the liberal pleading requirements of Rule 8." *Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1309 (M.D. Fla 2010) (citing *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958–59 (11th Cir. 2009)).

on a single case where a court has determined that the mere status of a former spouse gives rise to a fiduciary relationship. Because Plaintiff has failed to explain or allege how Defendant – as a former spouse – entered into a fiduciary relationship with the protection of Mr. Capuano's estate, Plaintiff's constructive fraud claim lacks an essential element to remain viable.

To cure that problem, Plaintiff argues that a fiduciary relationship arose because of Defendant's appointment as the personal representative of the estate. *See Pearson v. Countrywide Home Loans, Inc.*, 2014 WL 978324, at *3 (M.D. Fla. Mar. 12, 2014) ("Florida has recognized a number of fiduciary relationships, including . . . personal representative to heirs and creditors") (citations omitted). There are at least two problems with Plaintiff's argument. The first is that Plaintiff never includes this allegation in her amended complaint in connection with her constructive fraud claim. While Plaintiff mentions that the probate court, at one point, appointed Defendant as personal representative of the estate, the constructive fraud claim is only tied to Defendant's former relationship with the decedent. *See* [D.E. 138 at ¶¶ 64-66]. Plaintiff never links Defendant's appointment as the personal representative of the estate with Plaintiff's allegations for constructive fraud. Because Plaintiff may not amend her complaint in response to a motion to dismiss, this is a sufficient reason, by itself, to dismiss Plaintiff's constructive fraud claim. *See Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1356 n.6 (S.D. Fla. 2012) ("[A] Plaintiff may not amend a complaint via a response to a motion to dismiss.") (citing *Long v. Satz,* 181 F.3d 1275, 1278–79 (11th Cir. 1999)).

A separate reason Plaintiff's constructive fraud claim is defective is because every allegation in the complaint includes acts that *predated* Defendant's appointment as the personal representative of Mr. Capuano's estate. It is therefore hard to fathom how Defendant breached a fiduciary relationship for her acts as the personal representative of the estate when the acts complained of preceded her appointment. And if there are acts that constitute a breach of Defendant's fiduciary responsibilities as the personal representative of the estate, Plaintiff has failed to make those clear in her complaint and the Court is under no obligation to piece together allegations to rescue Plaintiff's claims. For these reasons, Defendant's motion to dismiss count two is **GRANTED with prejudice**.[8] *See Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l, Inc.*, 264 F. App'x 878, 881 (11th Cir. 2008) ("SAF alleged that Ryder had committed a constructive fraud. Once again, a fiduciary relationship is required in order to succeed on such a claim.") (citing *Levy v. Levy,* 862 So. 2d 48, 53 (Fla. 3rd DCA 2003)

---

[8] Plaintiff's constructive fraud claim is granted with prejudice because, given the procedural posture of this case, it is far too late for Plaintiff to develop new theories of liability. It is also granted with prejudice because, if Plaintiff alleges that a fiduciary relationship arose *after* Defendant was appointed as the personal representative of the decedent's estate, that may implicate the probate exception. In other words, there is a credible argument that Plaintiff might be seeking relief for a matter that is best reserved for the probate court because a personal representative's malfeasance relates, in some respects, to how an estate is administered. We need not answer this question, however, for the reasons already stated. We further clarify that the dismissal of Plaintiff's claim with prejudice is limited solely to this case and the Court's federal jurisdiction. To the extent these matters are raised in probate court, that is a different matter entirely.

("Constructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused")).[9]

### (4) Breach of Fiduciary Duty

Count four of Plaintiff's complaint includes many of the same allegations as Plaintiff's constructive fraud claim. Plaintiff argues, that – by virtue of Defendant's position as the estranged wife of Mr. Capuano – Defendant breached her fiduciary duties to the estate. "The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) breach of a duty owed by the fiduciary; and (3) proximate cause." *Combe v. Flocar Inv. Grp. Corp.*, 977 F. Supp. 2d 1301, 1307 (S.D. Fla. 2013) (citing *Gracey,* 837 So. 2d at 353). While "[p]laintiff is not required to prove the existence of a fiduciary relationship," she "must allege that one exists with sufficient plausibility." *Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*, 2019 WL 3532024, at *3 (S.D. Fla. Aug. 2, 2019) (citing *Twombly*, 550 U.S. at 555).

Count four is defective for the same reasons as the constructive fraud claim because Plaintiff fails to allege how Defendant was a fiduciary merely because she is the former wife of Mr. Capuano. Plaintiff also fails to make clear how the acts

---

[9]     Defendant seeks to dismiss Plaintiff's conspiracy claim because every other count fails to state a claim. *See Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1360 (S.D. Fla. 2002), *aff'd*, 88 F. App'x 380 (11th Cir. 2003) ("Florida does not recognize an independent action for conspiracy.") (citing *Churruca v. Miami Jai Alai, Inc.,* 353 So. 2d 547, 550 (Fla. 1977); *Hoch v. Rissman, Weisberg, Barrett,* 742 So. 2d 451, 460 (Fla. 5th DCA 1999)). This argument is not viable because, for the reasons already stated, count one includes the necessary allegations to state a claim for civil theft. Because Plaintiff has at least one claim that has survived Defendant's motion to dismiss, Defendant's motion to dismiss count five is **DENIED**.

that Defendant committed, while she was the personal representative of the estate, breached her fiduciary obligations. Because Plaintiff has not presented a fiduciary relationship nor sufficient facts of how Defendant breached her responsibilities, Defendant's motion to dismiss count four is also **GRANTED with prejudice**.[10]

### E. *The Colorado River Doctrine*

Defendant's final argument is that this case should be dismissed because of the *Colorado River* doctrine. In *Colorado River*, the United States Supreme Court held that a federal court could abstain from a case if (1) a parallel lawsuit is proceeding in state court, and (2) the interests of wise judicial administration demand abstention. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818–20 (1976)). If a court determines that a federal case before it and a state court case are parallel, it must evaluate several factors to determine whether abstention is appropriate. *See Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1141 (11th Cir. 2013).

In evaluating whether there is a parallel state action, a court should evaluate the state case to determine if it involves "substantially the same parties and substantially the same issues" as the case before it. *Jackson–Platts*, 727 F.3d at 1140. "There is no clear test for deciding whether two cases contain substantially similar parties and issues." *Acosta v. James A. Gustino, P.A.*, 478 F. App'x 620, 622 (11th Cir. 2012). "[I]f there is any substantial doubt about whether two cases are parallel the court should not abstain." *Id.* Ultimately, federal courts have a

---

[10] We dismiss count four with prejudice for the same reasons provided in the dismissal of Plaintiff's constructive fraud claim.

"virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River*, 424 U.S. at 817 (citation omitted), and "[t]he doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it[.]" *Id.* at 813; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) ("[T]he decision to invoke Colorado River necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case.").

When Defendant presented this argument in May 2018, the Court rejected it because Defendant failed to show that this action was parallel to any other case. [D.E. 42]. Defendant now argues, however, that circumstances have changed, and that abstention is appropriate. Defendant suggests that the cases are parallel because they arise out of the same operative facts and involve the same parties.

However, we remain unconvinced that the *Colorado River* doctrine applies because – while the cases are similar – they are not parallel. The probate court involves issues where Plaintiff sued Defendant in her official capacity as the personal representative of the estate for Defendant's malfeasance in obtaining and executing her position. By contrast, Plaintiff sued Defendant individually for her participation in a conspiracy with Mr. Schirato to strip the decedent's estate of assets that occurred prior to and outside the context of the probate proceedings.

Defendant takes issue with this argument because Plaintiff could have raised these conspiracy allegations in state court. But, "*Colorado River* analysis looks only to those issues *actually raised* in the state case." *Duncanson v. Wine & Canvas*

*Dev., LLC*, 2015 WL 12838845, at *4 (M.D. Fla. June 24, 2015), *Report and Recommendation adopted*, 2015 WL 12844947 (M.D. Fla. Sept. 25, 2015), *amended in part*, 2015 WL 12838361 (M.D. Fla. Nov. 20, 2015) (emphasis added) (citing *Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994) ("[I]n deciding whether a state action is parallel for abstention purposes, the district court must compare the issues in the federal action to the issues *actually* raised in the state court action, not those that might have been raised.") (emphasis added)). And there has been no suggestion that Plaintiff has raised these allegations in state court, in part, because Mr. Schirato's involvement goes well beyond the administration of the estate in probate court. This also relates back to the differences in the proceedings where this case is concerned with Defendant's theft of estate assets in a conspiracy with Mr. Schirato as opposed to the probate proceedings relating to the administration of the decedent's estate.

We therefore agree with Judge Scola's earlier ruling where he denied Defendant's motion to dismiss because there is no parallel proceeding. [D.E. 42]. While there is obviously some overlap between the issues presented, Defendant has not demonstrated that the Court would have "nothing further to do in resolving any substantive part of th[is] case" if it invoked the *Colorado River* doctrine. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28. In other words, Defendant has now shown that the "state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Id.* (stating that, "[i]f there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the

stay"). Accordingly, Defendant's motion for the Court to invoke the *Colorado River* doctrine is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's motion to dismiss [D.E. 142] is **GRANTED in part** and **DENIED in part**:

A. Defendant's motion to dismiss count three (conversion) is **GRANTED without prejudice**.

B. Defendant's motion to dismiss counts two (constructive fraud) and four (breach of fiduciary duty) is **GRANTED with prejudice**.

C. Defendant's motion to dismiss counts one (civil theft) and five (conspiracy) is **DENIED**.

D. Defendant's motion to dismiss this case for a lack of diversity jurisdiction, *res judicata*, and the *Colorado River* doctrine is **DENIED**.

E. Any amended complaint is due within fourteen (14) days from the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of February, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge